IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-00653 (11) SOM |
|---|---|---|
| Plaintiff, | ) | ORDER DENYING MOTION TO SUPPRESS |
| vs. | ) | |
| DONALD SEALS (11), | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO SUPPRESS**

I.       **INTRODUCTION.**

      Defendant Donald Seals moves to suppress the contents of a bag seized from him on November 4, 2012, and statements he made following a search of the bag on the same date. Seals's motion to suppress is denied.

II.       **FACTUAL BACKGROUND.**

      The Government and Seals have stipulated to the facts they ask this court to consider on this motion. ECF No. 287. The court adopts the stipulated facts as this court's factual findings, and admits for the purposes of deciding this motion the exhibits attached to the stipulation.

      On November 4, 2012, law enforcement officers intercepted phone calls between Defendant John Penitani and Defendant Robert Akolo. Id., PageID #s 946-47. The phone calls indicated that a "tall . . . [d]ark skinned . . . fifty year[] old" drug courier was waiting to be picked up by Penitani at Baggage Claim "F" in the Honolulu International Airport. Id.,

PageID # 947.

Drug Enforcement Administration ("DEA") Special Agents observed an individual at Baggage Claim "F" matching that description of the courier. Id., PageID # 948. The individual, later identified as Defendant Donald Seals, was sitting on a bench with a black bag while talking on a cellular phone. Id.

At approximately 12:00 p.m, DEA Special Agent Patrick Wong approached Seals, identified himself as a law enforcement officer, and asked if he could speak with Seals. Id., PageID # 949. Seals agreed, and, in conversing with Agent Wong, said that he had arrived from Oakland, was vacationing in Hawaii for a couple of days, and did not yet have a hotel or return flight booked. Id. Seals also indicated that he had packed his own bag and that no other person had given him anything to carry on his flight. Id., PageID # 950. Agent Wong asked if he could search Seals's bag. Id. After discussion, Seals said, "I'd prefer that you not." Id.

Given what law enforcement agents knew from their investigation, which included wiretapped evidence, as well as Seals's responses to Agent Wong's questions and the indication that Defendant John Penitani was nearby, Special Agent Lauren Carney directed Agent Wong to arrest Seals at approximately 12:05 p.m. Id. Seals was taken to the Hawaii Airport Task Force ("HATF") office after his arrest in light of agents' concern that

Penitani and possibly other associates were about to arrive on the scene, which raised safety concerns for agents. Id., PageID #s 950-51.

At approximately 12:15 p.m., DEA agents searched Seals, then his bag, at the HATF office. Id., PageID # 951. The agents found in Seals's bag a plastic bag containing a white substance later identified as methamphetamine. Id.

At approximately 1:00 p.m., Seals was read his Miranda rights. Id., PageID # 952. Seals agreed to speak with DEA agents. Id. He said that this was his first visit to Hawaii, that he did not know the person he was to meet in Hawaii, that he could not go home or back to his life if he cooperated with agents, and that the agents already knew the "big fish." Id. Seals also said that he had gone through airport security with nothing on him, that this was a national security issue, and that he was in a motorcycle club in California. Id. The interview ended at 1:30 p.m. Id.

In his motion, Seals argues that the contents of his bag must be suppressed because the search of the bag was not a valid search incident to his arrest. ECF No. 236-1, PageID # 693. Seals also argues that the statements he made after the search of his bag must be suppressed as fruit of the poisonous tree. Id., PageID # 694-95.

The Government contends that the search of Seals's bag

was a valid search incident to arrest. ECF No. 269, PageID # 845-49. In the alternative, the Government argues that, because the contents of Seals's bag would inevitably have been discovered through an inventory search, that evidence should not be suppressed. Id., PageID # 852.

**III.     THE SEARCH OF SEALS'S BAG WAS A VALID SEARCH INCIDENT TO ARREST.**

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One exception to the warrant requirement is a search incident to lawful arrest. Arizona v. Gant, 556 U.S. 332, 338 (2009). The search incident to arrest exception "permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest." United States v. Smith, 389 F.3d 944, 950-51 (9th Cir. 2004). To be valid, "1) the area searched must be that area under the arrestee's immediate control when he was arrested, and 2) events between the time of the arrest and search must not render the search unreasonable." United States v. Nohara, 3 F.3d 1239, 1243 (9th Cir. 1993).

Seals contends that the search of his bag was not a valid search incident to arrest because it occurred "more than 10

4

minutes after his arrest, at a distant location, while Seals was handcuffed and locked in a holding room."  ECF No. 236-2, PageID # 693.

A search of property seized at the time of arrest "cannot be justified as incident to that arrest either if the search is remote in time or place from the arrest, or no exigency exists."  United States v. Chadwick, 433 U.S. 1 (1977), abrogated on other grounds by California v. Acevedo, 500 U.S. 565 (1991) (internal quotation marks and citation omitted).  The court must consider "whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former."  United States v. Smith, 389 F.3d 944, 951 (9th Cir. 2004) (internal quotation marks omitted).

The search of Seals's bag was not remote in time from his arrest.  While "[t]here is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search that is a contemporaneous incident of the arrest," United States v. McLaughlin, 170 F.3d 889, 892 (9th Cir. 1999), the Ninth Circuit has upheld searches incident to arrest occurring up to fifteen minutes after the arrest, and invalidated searches occurring thirty to forty-five minutes after the arrest.  Compare United States v. Weaver, 433 F.3d 1104, 1106-07 (9th Cir. 2006) (upholding a search that took place "ten to fifteen minutes" after the arrest as "a contemporaneous incident" of the

5

arrest), with United States v. Vasey, 834 F.2d 782, 787-88 (9th Cir. 1987) (invalidating a search conducted "anywhere from thirty to forty-five minutes" after the arrest).  The search of Seals's bag appears to have occurred within ten to fifteen minutes of the arrest, the same time frame the Ninth Circuit permitted in Weaver.  See ECF No. 287, PageID # 950-51.  Nothing in the record suggests that the time between Seals's arrest and the search of his bag invalidates the search, and Seals's counsel conceded at the hearing on this motion that, without more, the time gap was not problematic.

Moreover, the short delay appears to have been the result of exigent circumstances.  Agents were concerned that Penitani and possibly others would arrive on the scene and create a dangerous situation.  See ECF No. 287, PageID #s 950-51.

Nor does the location of the search of Seals's bag invalidate the search.  Although agents searched Seals's bag at a location other than that of Seals's arrest, it is similarly clear that agents transported Seals and his bag to the HATF office out of concern about the imminent arrival of people who might create a safety issue.  Id.  The agents were so anxious to move Seals before Penitani arrived that they did not even search Seals himself before moving him to the HATF office.  The HATF office was within the airport complex, a short distance from the site of the arrest, and Seals and his bag were searched in the office.

Under the circumstances presented by the arrest, the agents appear to have searched Seals's bag as soon as reasonably practicable and as close to the place of arrest as feasible. See United States v. Smith, 389 F.3d 944, 951 (9th Cir. 2004) ("[O]ur focus [is] not strictly on the timing of the search but its relationship to (and reasonableness in light of) the circumstances of the arrest."); McLaughlin, 170 F.3d at 892 ("[S]ome courts have characterized the critical issue as whether the arresting officers conducted the search as soon as it was practical to do so, including whether the officers took intervening actions not directly related to the search."); United States v. Turner, 926 F.2d 883, 887-88 (9th Cir. 1991).

The arrest, removal of Seals, and search of Seals's bag were part of a quick, continuous sequence of events. It cannot be said that the search was so separated from the arrest by intervening acts that it was not incident to the arrest. See Smith, 389 F.3d at 951 ("[A] search need not be conducted immediately upon the heels of an arrest, but sometimes may be conducted well after the arrest, so long as it occurs during a continuous sequence of events."); United States v. Nelson, 102 F.3d 1344, 1347 (4th Cir. 1996) ("Pragmatic necessity requires that we uphold the validity and reasonableness of a search incident to arrest if the search is part of the specific law enforcement operation during which the search occurs.").

Because the search of Seals's bag was a valid search incident to arrest, evidence obtained from the bag and Seals's statements subsequent to the search are not suppressed.

**IV.     THE SEARCH OF SEALS'S BAG WAS ALSO A VALID INVENTORY SEARCH.**

Even if the search of Seals's bag was not a valid search incident to arrest, the search was an allowable inventory search.

Inventory searches are not subject to the warrant requirement. Colorado v. Bertine, 479 U.S. 367, 371 (1987). "Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Id. at 372. To be valid, an inventory search "must be conducted according to standard agency procedures." United States v. Mancera-Londono, 912 F.2d 373, 375 (9th Cir. 1990). Standard procedures are required for the opening of containers during inventory searches because "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990).

In the present case, the Government shows that the evidence at issue would inevitably have been discovered by agents conducting an inventory search of Seals's bag following his arrest. The inevitable discovery doctrine, an exception to the exclusionary rule, "permits the admission of otherwise excluded

8

evidence if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." United States v. Reilly, 224 F.3d 986, 994 (9th Cir. 2000) (internal quotation marks omitted).

The Stipulation of Facts indicates that DEA agents would have inventoried the contents of Seals's bag following his arrest pursuant to standard DEA procedure. ECF No. 287, PageID # 953. "[I]t is not unreasonable for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." Illinois v. Lafayette, 462 U.S. 640, 648 (1983) (internal quotation marks omitted). Because the record shows that DEA agents would have conducted a search of Seals's bag pursuant to established procedures, the evidence obtained from Seals's bag would inevitably have been discovered. For that reason, even assuming the search incident to arrest exception to the warrant requirement does not apply here, the evidence obtained from the bag and Seals's subsequent statements are not suppressed.

**V.      CONCLUSION.**

Seals's motion to suppress is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 20, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Donald Seals (11), Crim. No. 13-00653 (11) SOM; ORDER DENYING MOTION TO SUPPRESS