IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00653 SOM (11) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| DONALD SEALS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.       INTRODUCTION.**

In 2014, Defendant Donald Seals was sentenced to 120 months in prison after pleading guilty to having conspired to possess 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Seals is incarcerated at a satellite camp at USP Lompoc in California and has served a little more than 4 years and 9 months of his 120-month sentence. He has a projected release date of March 29, 2024. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Seals's request is based on medical conditions making him susceptible to severe complications from the COVID-19 virus. He is 55 years old and has Type 2 diabetes, hypertension, asthma, and kidney disease. His BMI also indicates that he is obese. This court finds that extraordinary and compelling circumstances

justify reducing Seals's sentence of incarceration to time served plus 15 days. At the conclusion of 15 days from the date of this order, the Bureau of Prisons is to release Seals to serve his term of supervised release.

**II.      BACKGROUND.**

Seals entered a plea of guilty to Count I of the Superseding Indictment (conspiracy to possess 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846). *See* ECF No. 308 (Minutes of Guilty Plea before Magistrate Judge); 311 (Memorandum of Plea Agreement). Pursuant to a Report and Recommendation of the Magistrate Judge, this judge accepted the guilty plea. *See* ECF No. 324. In the Memorandum of Plea Agreement, Seals admitted that he had transported 2,200 grams of methamphetamine HC1 with a purity of 98.2%. *See* ECF No. 311, PageID # 1034-35. Seals's conduct was part of a larger drug conspiracy. This court determined that Seals, having acted as a courier rather than as someone who controlled the drug conspiracy, was less culpable than his codefendants. Seals's conduct as a drug courier did not involve violence. His criminal history put him in Category III based on nonviolent offenses in 1999 and 2004. According to Seals's Presentence Investigation Report, Seals had 12 other convictions, only one of which (dating from 1986) appears to have

involved hitting someone.  *See* Presentence Investigation Report, ECF No. 408.

This court sentenced Seals to a mandatory minimum term of 120 months in prison, 5 years of supervised release, and a special assessment of $100.  *See* Judgment in a Criminal Case, ECF No. 404.  Seals has served less than half of that 120 months. Now 55, Seals is at one of the satellite camps at USP Lompoc in California.  *See* ECF No. 645-5, PageID #s 4233 (Request for Administrative Remedy mentions his "unit" as "D-North Camp") and 4234 (indicating he is "at Lompoc FPC (Camp)"; ECF No. 645-4, PageID # 4230 (including Seals's description of his living quarters as "barrack style" with shared toilets and showers). Seals's anticipated release date is March 29, 2024.  *See* https://www.bop.gov/mobile/find_inmate/index.jsp (last visited July 1, 2020) (input inmate number 15158-022); ECF No. 653-2.

USP Lompoc has 1,538 inmates, with 1,087 at the USP, 143 at "Camp N," and 308 at another camp.  *See* https://www.bop.gov/locations/institutions/lom/ (last visited July 1, 2020).  As of the morning of July 1, 2020, USP Lompoc has 7 inmates and no staff members with active COVID-19, 165 inmates and 24 staff members who have recovered from COVID-19, and two inmates who have died from COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visited July 1, 2020). While the record does not indicate how many COVID-19 cases are

specifically at "Camp N," where Seals appears to be incarcerated, the record does show that social distancing is difficult at that camp. *See* ECF No. 645-4, PageID # 4230 ("All living quarters are barrack style living, shared toilets and showers.  My living space is a bunk bed with a[n] inmate sleeping 2ft above me, and 2 other inmates 4ft in front of me, behind me and on the sides of me.  Social distancing is non-exist[e]nt at this facility."). According to Seals, cleaning and hygiene supplies are in short supply at the facility.  *Id.*

Seals's motion states that he has "hypertension, asthma, diabetes, and kidney disease." *See* ECF No. 645.  His sealed medical records confirm those conditions, although for some of the conditions the records do not establish the severity of the conditions.  *See* ECF No. 648, 652.  According to the Presentence Investigation Report, Seals is 6 feet five and weighed 295 pounds. *See* ECF No. 408, PageID # 1728.  In April of this year he weighed 292 pounds. *See* ECF No. 652, PageID # 4434. This gives Seals a BMI of 34.6.  *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited June 30, 2020).

Seals's motion states that he is "a Care Level 1 inmate with a chronic medical condition." *See* ECF No. 645, PageID # 4213.  His Reply, on the other hand, says the "records demonstrate that Mr. Seals is a Care Level 2 for medical

4

purposes, and a Care Level 1 for mental health purposes." *See* ECF No. 654, PageID # 4579 n.2.  The BOP classifies "Care Level 1" inmates as those who "are less than 70 years of age and are generally healthy," but "may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." *See* ECF No. 649-2, PageID # 4410.  The BOP classifies "Care Level 2" inmates as those who "are stable outpatients who require clinical evaluations monthly to every 6 months" and whose "conditions can be managed through routine, regular scheduled appointments" with consultations by medical specialists from time to time.  *See id*.  Whether Seals is a "Care Level 1" or "Care Level 2" inmate is not important for purposes of the present motion.

Seals says that, if released, he will live with his wife and son at their home in Oakland, California.  He says the local hospitals are familiar with his medical conditions, as they treated him before he was incarcerated.  Seals says he is skilled in carpentry and construction, implying that he can get a job in those fields.  *See* ECF No. 645, PageID #s 4214-15; ECF 645-5, PageID # 4235.  Seals's wife says their relationship is intact, that she can support Seals, and that she is willing to abide by any conditions the court imposes if Seals is released.  *See* ECF No. 657.

## II.        ANALYSIS.

Seals's compassionate release request is governed by 18

U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under

§ 3582(c)(1)(A), it must (1) find that the defendant exhausted

his administrative remedies or that 30 days have passed since he

filed an administrative compassionate relief request; (2) also

find, after considering the factors set forth in section 3553(a),

that extraordinary and compelling reasons warrant a sentence

reduction; and (3) find that such a reduction is consistent with

the Sentencing Commission's policy statements. *United States v.

Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

6

### A.   Seals Has Satisfied the Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A).

Seals says he submitted an administrative compassionate release request to the warden of his prison on May 9, 2020, more than 30 days before filing this motion on June 12, 2020.  *See* ECF No. 645, PageID #s 4212-13.  While the Government notes that Seals did not provide this court with proof that he sent the request to the Warden on the day Seals says it was sent, the Government is not contesting Seals's satisfaction of the exhaustion requirement, citing instead authority for the proposition that many courts have decided compassionate relief motions when the 30-day period expired while a motion was pending.  *See* ECF No. 649, PageID #s 4388-89.  This court concludes that Seals has satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).

In his Reply, Seals states that he has been informed that his Warden is recommending his release to the Office of General Counsel in Washington, D.C.  *See* ECF No. 654, PageID # 4578.  This court nevertheless proceeds with the present motion because the Government has not withdrawn its opposition to Seals's motion, there has been no assurance from the Government that Seals will actually be released without a court ruling, and, even if Seals's release is approved by the Office of General Counsel, it is unclear when that will occur.

7

### B.   Seals Has Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release.

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has stated that it reads § 3582(c)(1)(A) as allowing this court considerable discretion, notwithstanding the absence of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute. *See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

The CDC currently lists the following conditions as creating an increased risk of a severe illness from COVID-19:

*Chronic kidney disease

*COPD (chronic obstructive pulmonary disease)

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 or higher)

*Serious heart conditions, such as heart failure,

coronary artery disease, or cardiomyopathies

*Sickle cell disease

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 1, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Pregnancy

*Pulmonary fibrosis (having damaged or scarred lung tissues)

*Smoking

*Thalassemia (a type of blood disorder)

*Type 1 diabetes mellitus

*Id.*

9

Under the CDC's guidance, Seals's asthma, by itself, is insufficient to put him at a potentially higher risk of severe complications from COVID-19, as the medical records are not clear as to whether his asthma is moderate to severe.  Seals's asthma is classified as "unspecified."  *See* ECF Nos. 652, PageID # 4435; and 654, PageID #s 4582-83.

However, the CDC indicates that Seals's hypertension combined with his Type 2 diabetes mellitus, chronic kidney disease, and obesity put him at higher risk of severe complications from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (noting that "hypertension (high blood pressure) . . . may increase your risk of severe illness from COVID-19," "type 2 diabetes increases your risk of severe illness from COVID-19," "chronic kidney disease of any stage increases your risk for severe illness from COVID-19," and "obesity, defined as a body mass index (BMI) of 30 or above, increases your risk of severe illness from COVID-19") (last visited July 1, 2020).

The Government argues that Seals's medical conditions are not severe enough to warrant compassionate release, as Seals is classified as a "Care Level 1" or "Care Level 2" inmate, meaning that his conditions are controllable.  The Government therefore argues that Seals is not at a higher risk of severe

complications from COVID-19.  The court rejects this argument.
With respect to Type 2 diabetes, the CDC does not require the
disease to be severe to create a higher risk of severe
complications from COVID-19.  *See id.*  In another case before
this court, *United States v. Kim*, Cr. No. 13-00303 SOM, ECF No.
71, PageID # 375, the Government conceded that diabetes, by
itself, is a "serious medical condition[] which qualifies as [an]
'extraordinary and compelling reason[]' for reduction within the
meaning of § 3582(c)(1)(A)," although the Government argued that
the condition still did not warrant release.

Similarly, the CDC does not require chronic kidney
disease or obesity to be severe to create a higher risk of severe
complications of COVID-19.  *Id.*

While Seals's hypertension, Type 2 diabetes, chronic
kidney disease, and obesity put him at higher risk of severe
complications from COVID-19, this court must still consider the
factors set forth in section 3553(a) before reducing his
sentence.  That section requires the court to impose a "sentence
sufficient, but not greater than necessary, to comply with the
purposes set forth in paragraph (2)," which provides:

(1) the nature and circumstances of the
offense and the history and characteristics
of the defendant;

(2) the need for the sentence imposed--
   (A) to reflect the seriousness of the
offense, to promote respect for the law, and
to provide just punishment for the offense;

11

(B) to afford adequate deterrence to
criminal conduct;
    (C) to protect the public from further
crimes of the defendant; and
    (D) to provide the defendant with needed
educational or vocational training, medical
care, or other correctional treatment in the
most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing
range established for--
    (A) the applicable category of offense
committed by the applicable category of
defendant as set forth in the guidelines--
(i) issued by the Sentencing Commission
pursuant to section 994(a)(1) of title 28,
United States Code, subject to any amendments
made to such guidelines by act of Congress
(regardless of whether such amendments have
yet to be incorporated by the Sentencing
Commission into amendments issued under
section 994(p) of title 28); and
(ii) that, except as provided in section
3742(g), are in effect on the date the
defendant is sentenced; or
    (B) in the case of a violation of
probation or supervised release, the
applicable guidelines or policy statements
issued by the Sentencing Commission pursuant
to section 994(a)(3) of title 28, United
States Code, taking into account any
amendments made to such guidelines or policy
statements by act of Congress (regardless of
whether such amendments have yet to be
incorporated by the Sentencing Commission
into amendments issued under section 994(p)
of title 28);

(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission
pursuant to section 994(a)(2) of title 28,
United States Code, subject to any amendments
made to such policy statement by act of
Congress (regardless of whether such
amendments have yet to be incorporated by the
Sentencing Commission into amendments issued

12

under section 994(p) of title 28); and
          (B) that, except as provided in section
3742(g), is in effect on the date the
defendant is sentenced.

(6) the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of similar
conduct; and

(7) the need to provide restitution to any
victims of the offense.

18 U.S.C.A. § 3553(a).

The record indicates that Seals is a nonviolent drug
offender who has served a substantial prison sentence (although
it is less than half of his 120-month sentence). Seals played a
small role as a courier in a large drug conspiracy and was
sentenced to a statutory minimum sentence of 120 months in
prison. While Seals had multiple previous convictions, those
convictions are from years ago; the most recent conviction before
the current methamphetamine conviction was for a nonviolent
misdemeanor in 2004.

One conviction from 1986 appears to have involved
Seals's hitting someone. *See* ECF No. 408, PageID # 1721-22.
However, there is no evidence in the record that since that
conviction 34 years ago Seals has displayed violence. Seals says
that, while incarcerated, he has not received any disciplinary
sanctions and has taken advantage of opportunities to
rehabilitate himself. *See* ECF No. 645-2. Given the totality of
these circumstances, this court concludes that Seals has paid a

13

substantial debt to society and that he no longer poses a danger to the community if released from prison.

If released, Seals plans to live with his wife in their home in Oakland, California. He expects to be treated at local hospitals that are familiar with him. Seals says he can get a job in carpentry and construction. *See* ECF No. 645, PageID #s 4214-15. While the Government notes on pages 20 to 21 of its Opposition that living with his wife might prove difficult as they have not lived together for a while, and that getting a job might also be difficult, those speculative difficulties do not mean that Seals's release plan is unmeritorious. To hold otherwise would mean that all release plans are unmeritorious, as they all involve a degree of speculation about future conduct. Moreover, Seals's wife has indicated that their relationship is intact and that she will support him if he is released. *See* ECF No. 657.

USP Lompoc has 1,538 inmates, with 1,087 at the USP, 143 at "Camp N," and 308 at another camp. *See* https://www.bop.gov/locations/institutions/lom/ (last visited July 1, 2020). As of the morning of July 1, 2020, USP Lompoc has 7 inmates and no staff members with active COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited July 1, 2020).

With USP Lompoc's number of active cases of COVID-19 having dropped (nearly 200 inmates and staff members have

14

recovered from COVID-19), the Government contends that the facility's COVID-19 procedures are working and that the situation at USP Lompoc is under control.  However, it is not clear from the record that the drop in instances of inmates with COVID-19 results from BOP efforts to prevent the spread of it.  Possibly, there has been insufficient testing, or individuals have sought to hide their condition to avoid quarantine.  More importantly, the record does not reflect what efforts the BOP is taking to prevent Seals from being exposed to COVID-19 at his camp specifically.

        The record of active cases at USP Lompoc is a composite that includes the camps.  The statistics do not separate out the members for each camp from the total at USP Lompoc.  This raises the possibility that all of the active cases are at the camp in which Seals is incarcerated.  As this court noted in *United States v. Kamaka*, 2020 WL 2820139, at *1 (D. Haw, May 29, 2020), the dormitory setting at the camps at USP Lompoc "invites the further spread of the coronavirus."  While the defendant in that case appears to have been at a different USP Lompoc camp from Seals, the communal dormitory setting in both camps, with shared toilets and showers, means that, when "an inmate is infected but has not been identified as such and isolated, other inmates almost certainly will come into contact with him."  *Id.* at *4. Given the active cases of COVID-19 at USP Lompoc and the lack of

15

information about Seals's specific camp, this court remains concerned that Seals's incarceration at USP Lompoc puts his health in jeopardy, given his medical conditions.

Having balanced the seriousness of Seals's crimes, the amount of time remaining on his sentence, any danger he may pose to the community if released, his behavior while incarcerated, his medical conditions, and the circumstances at the facility he is at, this court determines that Seals has shown extraordinary and compelling reasons for early release.

**III.    CONCLUSION.**

Seals's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is granted.

Seals's sentence is reduced to time served plus 15 days.  Following the 15 days, Seals shall be released to begin his term of supervised release.  The 15-day period is intended to allow his family to make arrangements to transport him home from USP Lompoc and to remove guns and alcohol from the residence. During the 15-day period, the court recommends that the facility quarantine Seals to reduce the possibility that he might be infected and transmit the virus once released.  The court further recommends that the quarantine not be in a communal setting; if possible, Seals should be moved to an individual cell during his last 15 days in custody.

Seals must go directly home to his residence in Oakland

16

California from USP Lompoc.  That is, Seals must travel from USP

Lompoc to his home without stops and without leaving the vehicle.

Seals shall abide by all of the standard, mandatory,

and special conditions of supervised release previously imposed,

including the ban on firearms and alcohol.  In addition, Seals

must abide by the following additional special condition:

> 5.  You will be monitored by a location
> monitoring technology as directed by the
> United States Probation Office for a period
> of 180 days, and you must follow the rules
> and regulations of the location monitoring
> program, pursuant to the Participant's
> Agreement. You are restricted to your
> residence at all times except for employment;
> education; religious services; medical,
> substance abuse, or mental health treatment;
> attorney visits; court appearances;
> court-ordered obligations; or other
> activities as pre-approved by the officer.
> You must pay the costs of the program, as
> directed by the probation officer.

Seals is ordered to report by telephone (808-284-8022)

to Timothy Jenkins of the United States Probation Office,

District of Hawaii, immediately upon his release from BOP

custody.  Mr. Jenkins's office will be contacting the Oakland

division of the United States Probation Office, Northern District

of California, concerning supervision of Mr. Seals.

17

It is so ordered.

DATED: Honolulu, Hawaii, July 1, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Seals*, Cr. No. 13-653 SOM (11); ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

18